UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                    Criminal Case No. 21-cr-20233
                                    Honorable Linda V. Parker

NORLAN LYNN CALHOUN,
a/k/a LYNN CALHOUN,

    Defendant.
_____/

## OPINION AND ORDER GRANTING IN PART AND DENYING IN PART GOVERNMENT'S MOTION *IN LIMINE* (ECF NO. 33)

On April 7, 2021, Norlan Lynn Calhoun ("Defendant") was charged with one count of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 16.) Presently before the Court is the Government's motion seeking to introduce a 911 call and statements made to police during their investigation. (ECF No. 33.)

The Government contends that the 911 call and statements made to police captured on video by an officer's body camera should be admitted into evidence under the hearsay exception for excited utterances. (*Id.* at Pg ID 106-107.) Alternatively, the Government seeks to admit the 911 call under the present sense impression exception to the hearsay rule. (*Id.*) In response, Defendant argues that the call and the video are testimonial statements and therefore barred by the

Confrontation Clause. (ECF No. 37.) In reply, the Government argues that there was an ongoing emergency and thus the recordings are non-testimonial. (ECF No. 38.) For the reasons that follow, the Government's motion is granted in terms of the 911 call and denied with respect to statements made to police that were captured by body camera video.

**I.     Background**

On February 28, 2021, City of Detroit police officers responded to a 911 call concerning shots fired at a residence on Van Dyke Street in Detroit, Michigan. (ECF No. 1 at Pg ID 3.) Defendant's wife, Letitia McCall, made the 911 call, stating that Defendant shot at her vehicle five minutes prior, and that she recorded a video of the incident on her cell phone. (*Id*. at Pg ID 4; *see also* ECF No. 33 at Pg ID 107.) Officers arrived at the scene about ten minutes after the 911 call was made and spoke with Mrs. McCall about the incident. (*See* ECF No. 33 at Pg ID 108.) The interaction was captured on a video from one of the officer's body cameras. The Government has filed the recording of the 911 call and the body camera video in the traditional manner. (*See* ECF No. 35.)

**II.    Applicable Law**

"In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. Out-of-court testimonial statements are barred under the Confrontation Clause unless the witness is unavailable, and the defendant had an opportunity to cross-examine the

2

witness before trial. *Crawford v. Washington*, 541 U.S. 36, 57. (2004). "Statements taken by police officers in the course of interrogations are . . .testimonial under even a narrow standard." *Id.* at 52. "They are testimonial when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547 U.S. 813, 822 (2006). Statements are nontestimonial when the "primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." (*Id.*)

Out-of-court statements offered to prove the truth of the matter asserted—whether testimonial or non-testimonial—are excluded as hearsay unless the statements fall within an exception to the hearsay rule. *See* Fed. R. Evid. 802. Excited utterances are excluded from the rule against hearsay. Fed. R. Evid. 803(2). An excited utterance is "[a] statement relating to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id.* "The . . . exception is based on the belief that the statement is reliable because it is made while the declarant is under the stress of excitement." *United States v. Davis*, 577 F.3d 660, 669 (6th Cir. 2009) (quoting *Haggins v. Warden, Fort Pillow State Farm,* 715 F.2d 1050, 1057 (6th Cir. 1983)). The exception may be based solely on "[t]estimony that the declarant still appeared nervous or

distraught and that there was a reasonable basis for continuing [to be] emotional[ly] upset." *United States v. Arnold*, 486 F.3d 177, 185 (6th Cir. 2007).

The party seeking to introduce a statement under the excited-utterance exception must satisfy three elements. *Davis*, 577 F.3d at 669. First, the event must be "startling enough to cause nervous excitement." *Id.* "Second, the statement must be made before there is time to contrive or misrepresent." *Id.* Finally, "the statement must be made while the person is under the stress of the excitement caused by the event." *Id.* "All three inquiries bear on 'the ultimate question': 'whether the statement was the result of reflective thought or whether it was a spontaneous reaction to the exciting event.'" *Arnold*, 486 F.3d at 184.

Present sense impressions also are excluded from the rule against hearsay. Fed. R. Evid. 803(1). These are "statement[s] describing or explaining an event or condition, made while or immediately after the declarant perceived it." *Id.*

## II. Analysis

### A. 911 call

#### 1. Admissibility as a Hearsay Exception

The 911 call does not satisfy all three factors of the excited-utterance exception. While a car being shot at multiple times may reasonably startle a witness, and while five minutes may not have been enough time for Mrs. McCall to contrive or misrepresent before calling 911, she did not appear to be under stress of excitement when she made the call. The Government contends that her voice

4

was trembling, demonstrating a distressed mental state. (ECF No. 33 at Pg ID 113.) The Court disagrees with that assessment.

Mrs. McCall does not sound distressed or excited on the recording. Her tone is conversational. She attentively responded to each question asked by the operator and relayed a sequence of events. She provided the address of her location, including the cross streets. (911 call at 00:14-22.) Mrs. McCall also identified Defendant by his full name, stating that he was the shooter, and confirmed her relationship to him. (*Id.* at 00:27, 00:47.) She informed the operator that she was not in the car when the shooting occurred, that she recorded the incident on her cell phone, and she offered that Defendant shot at her sister's car as well. (*Id.* at 00:55-1:01.) At no point during the call did Mrs. McCall express any urgency for the police to get to her. She did not indicate that she was afraid, needed help, or that she was in danger. *See United States v. Guthrie,* 557 F.3d 243, 250 (6th Cir. 2009) (acknowledging the district court's findings that the 911 caller's calm demeanor and the time she had to contrive facts did not fall within the excited-utterance exception).

Mrs. McCall's lack of excitement is evidenced by her neutral tone. When her voice did escalate during the call, she seemed to be responding to someone in her background. (*Id.* at 00:34.) She was heard saying, "I got the– ", before returning to the operator to answer her question about when the event occurred. (*Id.* at 00:34-37.) The circumstances are distinguishable from cases where courts

5

admitted 911 calls under the excited-utterance exception. *See Davis*, 547 U.S. 813 (2006) (victim's call was a call for help against a bona fide physical threat); *Arnold*, 486 F.3d at 184, (affirming the district court's decision to admit the content of a 911 call because the operator had difficulty understanding the caller's frantic pleas for help, repeatedly telling him to "calm down" and "quit yelling," in addition to the caller's report of "being threatened by a convicted murderer wielding a semi-automatic handgun"); *United States v. White*, No. 09-20438, 2010 WL 2105136, at *3 (E.D. Mich. May 25, 2010) (admitting a 911 call into evidence because the statements were made during an ongoing emergency, indicating that the caller told the dispatcher "he's standing out there with a gun now").

The 911 call, however, falls under the present sense impression exception. Within five minutes of the shooting, Mrs. McCall called 911 to report the crime. (ECF No. 33 at Pg ID 112; ECF No. 37 at Pg ID 142.) The statements to the 911 operator were made to describe an event that occurred minutes prior. Mrs. McCall provided a first-hand narrative and maintained that she recorded evidence of the shooting on her cell phone. Her statements were consistent with those she subsequently reported to the officers in person. *See White*, 2010 WL 2105136, at *3 (concluding that the witness's 911 call fell within the present sense impression exception because he had personal knowledge of the events and described them shortly after perceiving them); *see also, United States v. Price,* 58 F. App'x 105, 107 (6th Cir. 2003) (affirming the district court's decision to admit hearsay

6

statements under present sense impression because the caller's "firsthand knowledge may be inferred from the 911 tape" and "a call made within minutes of the event is sufficiently contemporaneous to qualify under either exception").

### 2. Admissibility Under the Confrontation Clause

Having determined that the 911 call is admissible under the present sense impression exception, the Court still must decide whether Mrs. McCall's statements during the call are testimonial or nontestimonial. *See United States v. Hadley*, 431 F.3d 484, 504-05 (6th Cir. 2005) (providing that the analysis of whether a statement is admissible under the rules of evidence is separate from the inquiry as to whether it is testimonial). If the statements are testimonial, the Confrontation Clause bars their admission if Mrs. McCall is unavailable to testify at trial as Defendant has not had a prior opportunity to cross-examine her. *Crawford*, 541 U.S. at 53-54.

Like the 911 call in *Davis v. Washington*, Mrs. McCall's statements to the police dispatcher were made "under circumstances objectively indicating that the primary purpose of the interrogation [wa]s to enable police assistance to meet an ongoing emergency." 547 U.S. at 823. Mrs. McCall was "describ[ing] current circumstances requiring police assistance." *Id*. at 827. Despite the Court's finding that the statements were not excited utterances, and despite the fact that the call was made five minutes after shots were fired at Mrs. McCall's vehicle and Defendant had left the scene, Mrs. McCall was providing information to obtain

7

police assistance. There was a continuing threat to Mrs. McCall and potentially the public at large by a shooter who presumably remained armed and was at large. Finally, Mrs. McCall was not being formally interrogated.

Thus the Court concludes that Mrs. McCall's statements to the 911 dispatcher were nontestimonial and, as such, the Confrontation Clause does not bar the admission of the 911 call at trial.

B.   **Statements made during police investigation**

The Government unpersuasively argues that Mrs. McCall's statements captured by the body camera video should also be admitted under the excited-utterance exception.[1] (ECF No. 33 at Pg ID 117.) The Government argues that Mrs. McCall was still in an excited state when she spoke with the officers. (*Id.*) The video recording does not support this assessment.

The officers interviewed Mrs. McCall about ten minutes after the 911 call was made. As reflected in the video, Mrs. McCall's demeanor as she interacted with the officers was comparable to her tone during the 911 call. (*See* Bodycam Video.) At no point in the video does she appear to be distraught, excited, or threatened. She remained conversational. She responded calmly to the police officer's questions and engaged in conversation with multiple individuals. (*Id.* at 3:03.) Contrary to the Government's claim that her distress was evidenced when

---

[1] The Government does not claim that the body camera video should be admitted under the present sense impression exception to the hearsay rule.

8

she cried out "Jesus" (*see* ECF No. 33, at Pg ID 108), the comment seems to have been made in response to a comment by another civilian on the scene regarding the damage to Mrs. McCall's engine rather than the distress of the shooting. (*Id.* at 7:52)

As the investigation continues, a car speeds down the street past the officers and Mrs. McCall. (*Id.* at 3:27.) The Government argues that Mrs. McCall appeared to be shaken by her fear that Defendant could be the driver. (ECF No. 33 at Pg ID 108.) It is the officer, however, and not Mrs. McCall who reacts to the speeding vehicle. (Bodycam Video at 3:30.) Mrs. McCall is seen with her attention on her cell phone as the car approaches and passes. (*Id.* at 3:36.) When the officer asked if the speeding vehicle was Defendant, Mrs. McCall calmly responds that she does not know. (*Id.* 3:38.) The officers did not take action to investigate whether the car was driven by Defendant.

The body camera video does not reflect that Mrs. McCall was under the stress of the event or that an emergency was ongoing. There did not appear to be an immediate threat of danger—or at the very least, Mrs. McCall did not appear to perceive such a threat. Instead, Mrs. McCall's statements to the officers constituted quintessential testimonial statements to prove past events relevant to later criminal prosecution. She was describing "what happened" rather than "what is happening[.]" *Michigan v. Bryant*, 562 U.S. 344, 357 (2011) (quoting *Davis*, 547 U.S. at 829). She was neither making "a cry for help" nor providing

9

"information enabling officers immediately to end a threatening situation." *Id.* (quoting *Davis*, 547 U.S. at 832). As in *Davis*, Mrs. McCall's statements to the officers were "deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed." *Davis,* 547 U.S. at 830. Mrs. McCall's statements are in stark contrast to those courts have found to be non-testimonial and admissible under the excited-utterance exception. *See, e.g.*, *Arnold*, 486 F.3d at 186 (finding statements to police to be nontestimonial where the victim approached officers "crying," "hysterical," "visibly shaken and upset"); *see also Bryant*, 562 U.S. at 349 (concluding that statements made to police were nontestimonial where victim was lying on the ground with a gunshot wound to his abdomen, appeared to be in great pain, and had difficulty speaking).

The body camera video, and therefore the statements made identifying Defendant as the shooter in the video, are inadmissible hearsay. The Court therefore finds it unnecessary to decide whether their admission would violate the Confrontation Clause.

Accordingly,

**IT IS ORDERED** that the Government's Motion *in Limine* (ECF No. 33) is **GRANTED IN PART** and **DENIED IN PART** in that the 911 call, but not the

body camera video, is admissible.

**IT IS SO ORDERED.**

                                               s/ Linda V. Parker
                                               LINDA V. PARKER
                                               U.S. DISTRICT JUDGE

Dated: April 11, 2022