UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                Criminal Case No. 21-20233
                                Honorable Linda V. Parker

NORLAN LYNN CALHOUN,
a/k/a LYNN CALHOUN,

    Defendant.
_____/

## OPINION AND ORDER DENYING MOTION *IN LIMINE* (ECF NO. 45)

Defendant Norlan Lynn Calhoun ("Defendant") is charged in a Superseding Indictment with one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). (ECF No. 16.) The case arises from an incident where Defendant allegedly shot up the vehicle of his wife, Letitia McCall. McCall testified before the grand jury but now moves to assert the spousal privilege to avoid testifying at Defendant's trial. (ECF No. 45.) Although recognizing that a spouse may be compelled to testify "[i]n a cause of action that grows out of a personal wrong or injury done by one to the other," McCall maintains that this exception does not apply because she was not a victim and was not harmed by Defendant's alleged crime. (*Id.* at 186 (quoting Mich. Comp. Laws § 600.2162).) The Government argues that two exceptions to the privilege apply

here: (1) Defendant and McCall's marriage essentially was over long before the shooting occurred; and (2) McCall is the victim of Defendant's crime. (ECF No. 52.) The Court agrees with the Government that at least the second exception applies and, therefore, is denying McCall's motion.

I.     **Background**

On February 28, 2021, after a dispute during a gambling party, Defendant threatened to shoot up McCall's car. He allegedly then went to his parked vehicle, retrieved a gun from the trunk, and shot McCall's car with numerous bullets. While standing nearby, McCall recorded the shooting on her cellphone. When officers from the Detroit Police Department subsequently arrived on the scene, McCall showed them the video from her cellphone. She also identified Defendant as the shooter.

In the video from one of the officer's body cameras, McCall also can be heard telling the officer that she and Defendant married ten years ago but only lived together for six months. (*See* Resp. Ex. 1 at 19:08). McCall further indicated that she and Defendant get together every six months or so to engage in sexual relations but they have not lived together for eight years and have no children. (*Id* at 16:35, 17:54, 17:58, 19:08, 19:38).

II. **Applicable Law and Analysis**

Pursuant to Federal Rule of Evidence 501, in a criminal case, "[t]he common law—as interpreted by United Sates courts in the light of reason and experience—governs a claim of privilege" unless the United States Constitution, a federal statute, or rules proscribed by the Supreme Court provide otherwise.

At common law, the privilege against adverse spousal testimony could be invoked by either spouse to prevent the other from giving adverse testimony. *United States v. Trammel*, 445 U.S. 40, 43-45 (1980). "The modern justification for this privilege . . . is its perceived role in fostering the harmony and sanctity of the marriage relationship." *Id.* at 44. In *Trammel*, however, the Supreme Court held that one spouse can testify against the other without the other's consent. *Id.* at 53. The Court reasoned that "[w]hen one spouse is willing to testify against the other in a criminal proceeding—whatever the motivation—their relationship is almost certainly in disrepair; there is probably little in the way of marital harmony for the privilege to preserve." *Id.* at 52. Relying on the same reasoning, Circuit Courts, including the Sixth Circuit have held that the privilege does not apply "where the marriage between the defendant and the testifying spouse is in fact moribund, though legally still valid." *United States v. Brown*, No. 93-1357, 1993 WL 533505, at *3 (6th Cir. Dec. 21, 1993) (citing *United States v. Byrd*, 750 F.2d 585, 590 (7th Cir. 1984); *United States v. Cameron*, 556 F.2d 752, 755-56 (5th Cir.

3

1977)). In *Brown*, the Sixth Circuit held that the privilege was not applicable where the defendant and his wife were permanently separated and the wife considered the marriage over, with no realistic hope of reconciliation. 1993 WL 533505, at *3-4.

The privilege against adverse spousal testimony, like all privileges, "must be strictly construed and accepted 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'" *Trammel*, 445 U.S. at 50 (1980) (quoting *Elkins v. United States*, 364 U.S. 206, 234 (1960) (Frankfurter, J., dissenting)). This is because "[t]estimonial exclusionary rules and privileges contravene the fundamental principle that the 'public has . . . a right to every man's [or woman's] evidence.'" *Id*. (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)).

Nevertheless, the Sixth Circuit has expressed reluctance to "assess the social worthiness of particular marriages or the need of particular marriages for the protection of the privilege." *United States v. Sims*, 755 F.2d 1239, 1243 (1985) (citing *Appeal of Malfitano*, 633 F.2d 276, 279 (3d Cir. 1980)); *see also United States v. Ingersoll*, No. 14-cv-20216, 2015 WL 5968750, at *1 (E.D. Mich. 2015) (concluding that where the defendant and his wife were currently married and the government had not asserted that the marriage was fraudulent or a sham, "there is

4

no justification for inquiring into or speculating about the ongoing viability of any marital relationship. Nor is it the burden of any person to prove that his or her ongoing marriage meets any particular standard of functionality or viability"). In *Brown*, where the court upheld the district court's assessment that the marriage was over and that the exception, therefore, did not apply, the district court had made the assessment after questioning the defendant's wife in court. 1993 WL 533505, at *2. The Court finds it unnecessary to engage in such an inquiry and judge the status of Defendant and McCall's marriage because another exception to the privilege applies.

Even before *Trammel*, the Supreme Court recognized a long-established exception to the spousal testimony privilege where the spouse is the victim of the defendant's crime. *Wyatt v. United States*, 362 U.S. 525, 530 (1960); *Trammel*, 445 U.S. at 46 n.7 (dating the exception to 1631). In that instance, the Court held, the court can compel the victim spouse to testify as a witness. *Id.*; *see also United States v. Underwood*, 859 F.3d 386, 390 (6th Cir. 2017) (citing *Wyatt* and recognizing that "federal courts have also created an exception to the privilege in instances in which the spouse commits an offense against the other spouse"). The exception has been expanded to include crimes against a spouse's personal property. *See, e.g., Herman v. United States*, 220 F.2d 219, 226 (4th Cir. 1955) ("[A] wife can be a witness against her husband not only when personal injury to

5

her of a physical or moral nature is claimed, but also where the crime affects her property."); *Trammel*, 445 U.S. at 46 n.7 (recognizing that the exception has been expanded to include crimes against the spouse's property); *United States v. White Owl*, 39 F.4th 527, 530 (8th Cir. 2022) (recognizing a spouse's crime against the person or property of the other spouse as an exception to the privilege); *United States v. Graham*, 87 F. Supp. 237 (E.D. Mich. 1949) (concluding that exception applied in prosecution of husband for transporting money stolen from his wife).

It does not appear that the Sixth Circuit has discussed the privilege in the context of a crime against a spouse's property. However, under Michigan statutory and common law, the privilege is not applicable in cases arising from crimes against the spouse's person or the spouse's property. *See* Mich. Comp. Laws § 600.2162(3)(d); *People v. Butler*, 424 N.W.2d 264, 267-68 (Mich. 1988) (holding that the exception to the spousal privilege applied in prosecution of husband for setting fire to his wife's apartment). As the Supreme Court recognized in *Trammel*, trends in state law with respect to spousal privilege have "special relevance because the laws of marriage and domestic relations are concerns traditionally reserved to the states." 445 U.S. at 49-50 (citing *Sosna v. Iowa*, 419 U.S. 393, 404 (1974)). Further, compelling a spouse to testify in this instance addresses the fact that domestic violence crimes are "notoriously susceptible to intimidation or coercion of the victim to ensure that she does not testify at trial[,]"

6

a fact recognized by the Supreme Court in *Davis Washington*, 547 U.S. 813, 832-33 (2006). Finally, as indicated above, the Supreme Court has advised that the spousal privilege, like all privileges "must be strictly construed . . .." *Trammel*, 445 U.S. at 50 (1980) (quoting *Elkins*, 364 U.S. at 234 (Frankfurter, J., dissenting)).

For these reasons, the Court concludes that McCall cannot invoke the spousal privilege to avoid testifying in this case, where Defendant allegedly shot up McCall's automobile in her presence.

Accordingly,

**IT IS ORDERED** that McCall's Motion *in Limine* (ECF No. 45) is **DENIED** in that she can be compelled to testify as a witness at Defendant's trial.

**IT IS SO ORDERED.**

                                                           s/ Linda V. Parker
                                                           LINDA V. PARKER
                                                           U.S. DISTRICT JUDGE

Dated: August 25, 2022